UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20277-MIDDLEBROOKS

UNITED STATES OF AMERICA,

vs.

FREDY DONALDO MARMOL VALLEJO,

Defendant.
_____/

## PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States of America (the "United States") for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Fredy Donaldo Marmol Vallejo (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On May 4, 2021, a federal grand jury returned an Indictment charging the Defendant in Count 1 with a money laundering conspiracy in violation of 18 U.S.C. § 1956(h), in Count 2 with an international narcotics trafficking conspiracy in violation of 21 U.S.C. §§ 963 and 959, and in Count 3 with international distribution of narcotics with intent to import in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2. Indictment, ECF No. 1. The Indictment also contained forfeiture allegations, which alleged, in relevant part, that upon conviction of a violation of 21 U.S.C. §§ 963 or 959 the Defendant shall forfeit "any property constituting, or derived from , any proceeds obtained, directly or indirectly, as the result of such offense, and any property used, or intended to be used, in any manner or part, to comm it, or to facilitate the commission of such offense, pursuant to Title 21, United States Code, Section 853." *See id.* at 3-4. The Indictment further alleged that the property subject to forfeiture included a forfeiture money judgment of at least $150,000.00.

*Id.* at 4. The United States has since identified the following additional assets subject to forfeiture, including approximately $25,000, seized from a TD Ameritrade account on or about July 1, 2021. Plea Agreement ¶ 14.

On January 27, 2022, Defendant appeared before Magistrate Judge Chris M. McAliley and pleaded guilty to Count 2 of the Indictment. *See* Minute Entry, ECF No. 36. Magistrate Judge McAliley then issued a Report and Recommendation, in which she recommended that the Court accept Defendant's plea of guilty. Report & Recommendation, ECF No. 39. On April 12, 2022, at sentencing, the Court will adopt Magistrate Judge McAliley's recommendation and accept the Defendant's guilty plea to Count 2 of the Indictment. Plea Agreement ¶ 1. As part of the guilty plea, the Defendant agreed to the property subject to forfeiture "includes, but is not limited to," $25,000. Specifically, among other provisions in the Plea Agreement, the Defendant agreed to the following:

> 14. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a violation of 21 U.S.C. §§ 959 and 963, and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 853. In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:
>
>> i. approximately $25,000, seized from a TD Ameritrade account on or about July 1, 2021.

Plea Agreement ¶ 14.

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer. The United States Probation Office has since conducted a presentence investigation, which included information on the Defendant's financial condition. *See* Presentence Investigation Report ("PSI"),

ECF No. 53.

Defendant agreed in his factual proffer that co-conspirator testimony and corroborating evidence would show that, beginning in January 2013, a group of individuals conspired together with the Defendant to distribute cocaine and the Defendant was one of the members of the conspiracy. *See* Proffer. More specifically, the Defendant led a drug-trafficking organization that received kilograms of cocaine in Honduras. *Id.*; *see also* PSI ¶ 14. The cocaine was sent from Colombia and countries adjoining Colombia and, after being received by the Defendant, was typically sent further north to Mexico and the United States. *See* Proffer. The Defendant controlled several maritime ingress points from the Caribbean Sea used to receive cocaine laden aircraft from Colombia and Venezuela. *Id.* Among other things, the conspiracy with which the Defendant was involved included a plan to receive at least 3,000 kilograms of cocaine in Honduras in November 2019. *Id.* During the transport of this shipment, law enforcement seized over 3,000 kilograms of cocaine which was worth in excess of a million dollars in U.S. currency.

After Defendant was arrested in Honduras, the Honduran Agencia Técnica de Investigación Criminal ("ATIC") identified at least $20,000,000 worth of Defendant's property located in Honduras, including among other assets (all numbers approximate):

a. 32 real properties, including large houses, apartments, and condominiums in exclusive neighborhoods;

b. 24 commercial companies;

c. 97 vehicles;

d. 176 bank accounts;

e. 4 boats;

f. 1 commercial boat lift;

g. $9,641.00 in U.S. Currency;

      h.      8,009,425.45 in Honduran Lempiras (approx. USD$326,192.90);

      i.      143 head of cattle;

      j.      household items, including grand piano and autographed memorabilia;

      k.      2 tractors; and

      l.      1 Backhoe.

Morris Decl. ¶ 7. None of those assets are within the United States or are under United States custody. *Id.* ¶ 8.

As described above, Defendant purchased and/or obtained the $20,000,000 worth of assets during the course of the conspiracy, using proceeds of the conspiracy. *Accord* 21 U.S.C. § 853(d) (presumption that property purchased during course of narcotics violation is subject to forfeiture where no likely source of income other than the criminal activity); *United States v. Duboc*, 694 F.3d 1223, 1227 (11th Cir. 2012) ("21 U.S.C. § 853(d) establishes a rebuttable presumption that any property of the defendant is subject to forfeiture if the government establishes by a preponderance of the evidence that (1) the defendant acquired the property during the time of, or within a reasonable time after, the criminal activity, and (2) there was no likely source for the property other than the criminal activity."). Here, other than the conspiracy and criminal activity to which Defendant pleaded guilty, there is no *likely* source for the properties.[1]

Because Defendant purchased at least $20,000,000 worth of assets during the conspiracy period, using proceeds of the criminal conspiracy for which he pleaded guilty, $20,000,000 provides a reasonable estimate of the proceeds Defendant obtained during the course of the

---

[1] According to the PSI (*see* ¶ 62), Defendant owned a ranch that made between $28,000 and $60,000 per year, which is insufficient to support the purchase of $20,000,000 worth of assets. Thus, the ranch is not a *likely* source of income and the presumption under § 853(d) applies.

conspiracy.[2] *See Roberts*, 660 F.3d at 166 (money judgment can be based reasonable estimate on the amount of property subject to forfeiture); *see also supra* at p.5.

The United States has also not been able to locate all of the directly forfeitable property. It is the conclusion of Special Agent Morris that other directly forfeitable property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty. *See* Morris Decl. (attached as Exhibit A to Motion). Thus, pursuant to 21 U.S.C. § 853(p), the United States is authorized to forfeit substitute property, including but not limited to

   i. approximately $25,000, seized from a TD Ameritrade account on or about July 1, 2021.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

---

[2] A $20,000,000 forfeiture money judgment is a conservative estimate. First, the Government sought a forfeiture amount based on the amounts Defendant obtained personally during the course of the conspiracy. Insofar as Defendant was the leader of a drug-trafficking organization, the Government could have sought to hold him liable for all proceeds of the conspiracy. *Elbeblawy*, 839 F. App'x at 400; *Knowles*, 819 F. App'x at 783 n.1. The average price for a kilogram of cocaine during the conspiracy period was $31,161.76 per kilogram. Morris. Decl. ¶ 5. Defendant proffered to 3,000 kilograms of cocaine. *See* Proffer For 3,000 kilograms sold at $31,161.76 per kilogram, the proceeds would be $93,485,294.12. Second, Defendant pleaded guilty to an almost eight-year conspiracy. *See* Indictment; Plea Agreement. During that time period, Defendant controlled several maritime ingress points from the Caribbean Sea, in which he received cocaine from Colombia and Venezuela. *See* Proffer. In one shipment alone, Defendant shipped over 3,000 kilograms of cocaine. *Id.*; PSI ¶ 15. If Defendant shipped just one vessel of cocaine per year during the conspiracy, which vessel contained an equivalent amount of cocaine, using the average price for a kilogram that would amount to over $650,000,000.00 in proceeds.

2. Pursuant to 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $20,000,000.00 is hereby entered against the Defendant.

3. Pursuant to 21 U.S.C. § 853(p), the following substitute property is hereby forfeited and vested in the United States of America:

    i. approximately $25,000, seized from a TD Ameritrade account on or about July 1, 2021.

4. Any duly authorized law enforcement agency may seize and take possession of the forfeited property according to law.

5. The United States shall send and publish notice of the forfeiture in accordance with Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n).

6. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

7. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

8. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

It is further **ORDERED** that upon adjudication of all third-party interests, if any, the Court will enter a final order of forfeiture as to the property in which all interests will be addressed. Upon notice from the United States that no claims have been filed within 60 days of the first day

of publication or within 30 days of receipt of notice, whichever is earlier, then, pursuant to Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(7), this Order shall become a Final Order of Forfeiture and any duly authorized law enforcement agency shall dispose of the property in accordance with applicable law.

**DONE AND ORDERED** in Miami, Florida, this __31__ day of March 2022.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE